

## ENGAGEMENT AGREEMENT

**AGREEMENT** made by and between, the undersigned by and between, **VALDESIA GARDENS HOUSING DEVELOPMENT FUND CORPORATION** (hereinafter referred to as the "Client") and **FIA Capital Partners, LLC** ("FIA").

**WHEREAS,** the Client wishes to retain FIA to provide to the Client the services of David Goldwasser, who will serve as the Client's Chief Restructuring Officer (the "CRO"), in connection with the filing and prosecution of a Chapter 11 case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") petitions on behalf of the Client and all proceedings in connection therewith (the "Bankruptcy Matter").

### 1.   SCOPE OF SERVICES

The CRO's duties on behalf of Client shall include, but not be limited, to the following:

A. Subject to Client approval, arrange for the engagement of legal counsel of Davidoff Hutcher & Citron LLP as bankruptcy counsel (except to the extent already retained) to assist and advise client in connection with the Bankruptcy Case, where such counsel is required for the support and implementation of the strategies being utilized by the CRO in connection with the Obligations and the Property and provide guidance into the selection of said legal counsel; however, any such representation shall be governed by a separate retainer agreement between the Client and such legal counsel.

B. Assist with the management and operation of the Client's business, including management and maintenance of the Property, managing outside professionals for the Client, rights and powers to open and close bank accounts, and to disburse funds from such accounts consistent with any cash management order approved by the Bankruptcy Court.

C. Participate, as needed, with the Client's management in on-going communications and meetings with the Client's creditors, vendors and other stakeholders.

D. Evaluate and revise, as needed, the Client's cash needs pending disposition of the Property.

E. Evaluate and assist bankruptcy counsel to develop a plan of reorganization to liquidate or dissolution of the Client and discuss same with the Members, counsel, secured creditors, other creditors and/or governmental authorities, including the Office of the U.S. Trustee ("OUST").

F. Perform a comprehensive due diligence review of the Client, its liabilities and the Property, including, without limitation, its Schedules and Statement of Financial Affairs to be filed in the Bankruptcy Cases. If necessary, and as directed by Client, perform an

3284 North 29th Court, Hollywood, FL 33020

on-site inspection of the Property and physical review of the local markets and the larger general market.

G. Present recommendations to achieve a favorable workout plan or plan of reorganization.

H. Assist in the assembly of financial information to be disseminated in furtherance of the Chapter 11 Bankruptcy Case.

## 2. SCOPE OF BANKRUPTCY-RELATED SERVICES

In connection with the Client's Chapter 11 Bankruptcy Case, the CRO's duties on behalf of the Client shall also include, but not be limited to (subject to any applicable Bankruptcy Court approval) the following:

A. Act as a liaison and coordinate information flow and efforts between management of the Client and its advisors and creditors and their advisors, as well as the U.S. Trustee's office. Provide regular updates, including but not limited to updates on reasonable request, to key stakeholders, any official committees appointed in those proceedings, and their respective professionals, subject to reasonable and appropriate confidentiality restrictions.

B. Oversee use of cash collateral.

C. Attend Court proceedings, initial debtor interview and section 341 meetings, as well as additional meetings with creditors and stakeholders, as may be required. Provide testimony as reasonably required in connection with same.

D. Engage in negotiations, as requested by the Client, regarding any Chapter 11 plan and related documents.

E. Render other general "CRO-type" services to the extent necessary to implement the terms of this engagement and otherwise fulfill the CRO's duties and responsibilities, including attending court hearings, if so required, and identifying or evaluating strategies to maximize the value of the estate as appropriate.

F. Perform such other services as requested or directed by the Members as are reasonably related to the above-described services, and agreed to by the CRO.

The services herein provided are to be rendered solely to the Client. They are not being rendered by FIA as an agent or as a fiduciary of the Sole Member or the creditors of the Client and FIA shall not have any liability or obligation with respect to its services hereunder to such Sole Member, creditors, or to any officers, employees or any other person or entity, other than the Client.

## 3. TERM

The term of this Agreement shall commence on the date hereof and shall terminate upon the earlier of (i) Client's or CRO's termination of this Agreement pursuant to paragraph 7 hereof; (ii)

3284 North 29th Court. Hollywood, FL 33020



final dissemination of all net proceeds from any plan of reorganization, including payment of accrued but unpaid fees to the OUST; or (iii) entry of an Order closing the Bankruptcy Case.

## 4. PROJECTIONS; RELIANCE; LIMITATIONS OF DUTIES

The Client understands that the services to be rendered by the CRO and other FIA personnel may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Client's operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, the CRO, FIA and its personnel will be relying on information provided by other members of the Client's management in preparation of those projections and forward-looking statements. The CRO, and other FIA personnel and FIA are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Client. The CRO or any FIA personnel and FIA are under no obligation to update data submitted to them or review any other areas unless specifically requested by the Members to do so. FIA will not be responsible for independently verifying the accuracy of any information provided to FIA by the Client or its agents (and shall not be liable for inaccuracies in any information provided to FIA by or at the direction of the Client.

Neither the CRO, any other FIA personnel nor FIA makes any representation or guarantee that any restructuring or liquidation proposal or strategic alternative comprising the CPM can be formulated for the Client, that any CPM presented to the Client will be more successful than any or all other possible CPM, that restructuring is the best course of action for the Client or, if formulated, that any proposed CPM will be accepted by any of the Client's creditors or other constituents. Further, neither the CRO, any other FIA personnel nor FIA, assumes responsibility for the selection of any CPM that any officer or party assists in formulating and presenting to the Client, and the CRO and any other FIA personnel shall be responsible for implementation only of the CPM approved by the Members and only to the extent and in the manner authorized and directed by the Members.

## 5. ENGAGEMENT FEES

Client agrees to pay to CRO the following fees for its services throughout the term of this agreement, as follows:

- **$12,500.00** at the time of execution of this Agreement.

- An additional **$12,500.00** to be paid before filing for bankruptcy, if necessary.

- Beginning December 1, 2024, a monthly fee of **$5,000.00** will be billed to Client.

- A minimum total billed to Client of **$50,000.00**.

- A Per Diem Fee for travel to the Bankruptcy Court in the amount of $2,500.00, including travel expenses, payable upon Bankruptcy Court approval.

Payment of all fees and reimbursed out-of-pocket expenses shall be made per the following:

<u>By Wire or ACH</u>:

Account Name: FIA CAPITAL PARTNERS LLC
Account Address:
3284 N 29th Ct
Hollywood, FL 33020

Account # 898155414847
Routing # (electronic (ACH)): 063100277
Routing # (wires): 026009593

<u>By check</u>: Payment of all fees and reimbursed out-of-pocket expenses shall be made in care of FIA Capital Partners LLC, Attention: David Goldwasser, and mailed with a tracking number to 3284 N 29th Court Hollywood, FL 33020.

<u>By credit card</u>: Authorization form may be provided upon request. Note: all payments processed by credit card shall be subject to an additional 3.195% processing fee.

## 6. DISCLOSURES

FIA and the CRO confirm that none of its principals or professional staff have any financial interest or business connection with Client, and FIA and the CRO are aware of no conflicts regarding this Agreement. Since FIA is a consulting firm that serves clients both in and out of court, it is possible that FIA may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Client, including creditors of the Client. In the event the Client accepts the terms of this engagement, FIA will not represent, and FIA warrants that FIA has not represented, the interest of any such entities or people in connection with this matter. FIA shall monitor its records and the Bankruptcy Case for possible conflicts that could arise during the course of the engagement, and FIA will promptly file a disclosure with the Court should any come to FIA's attention. FIA reserves the right to resign from this engagement on written notice of not less than 15 days at any time if conflicts of interest arise or become known to it that, in its judgment, would impair its ability to perform objectively. However, any withdrawal or resignation shall be reasonably coordinated with the Client in a confidential manner so as to avoid any unnecessary disruption to the Bankruptcy Case [or any CPM that the Members determine to pursue].

## 7. TERMINATION

Either party hereto shall have the right to terminate this Agreement without cause upon thirty (30) days written notice to the other party. FIA may withdraw immediately and without prior notice for good cause without the Client's consent. Good cause includes the Client's material breach of this Agreement (including the Client's failure to pay any reasonable invoice or indemnity obligation when due), the Client's failure or refusal to reasonably cooperate with FIA, or any fact or circumstance that would render FIA's continuing representation unlawful or unethical. Without limiting its rights or remedies, FIA shall have the right to halt or terminate its



services entirely if payment is not received in strict accordance with the payment terms stated above. FIA shall also have the right to terminate its services if Bankruptcy Court approval of this Agreement, pursuant to a final order in form and substance to FIA, is not entered within 21 days of the commencement of a Bankruptcy Case (or the entry of an Order for Relief in an involuntary Bankruptcy Case)), which period may be extended by FIA, in its sole discretion.

Subject to Bankruptcy Court approval, all fees due to the CRO through the termination date shall be paid promptly and in full upon termination. In addition, notwithstanding termination of this Agreement, the CRO shall still be paid the fees required by paragraph 5 hereof upon a sale at the time of such sale.

In the event of Client's default of the obligations stated herein, Client shall be liable to FIA for FIA's costs and expenses, including reasonable attorneys' fees, related to recovery of amounts due under this Agreement. The Client's obligations to pay FIA's compensation and reimbursement of expenses set forth herein shall not be conditioned upon any particular results being achieved by FIA or actions pursued by the Client.

## 8. INDEMNIFICATION: LIMITATION ON LIABILITY

Subject to Bankruptcy Court approval, the Client agrees to hold harmless FIA from all claims and/or losses to which FIA may become subject in connection with FIA's role in this matter, and to indemnify FIA against any claims, losses and expenses as incurred (including the reasonable expense of investigation and preparation and reasonable legal fees and disbursements) arising out of or in connection with any action or claim, unless it is determined that that such losses, claims, damages or liabilities resulted from the gross negligence or willful misconduct of FIA or any controlling person, director, officer, member, employee, subcontractor, agent or affiliate of FIA. Such commitments shall extend upon the terms set forth in this paragraph 8 to the CRO, any controlling person, director, officer, member, employee, subcontractor, agent or affiliate of FIA (collectively, "FIA Indemnitees").

The Client agrees that the indemnification and reimbursement commitments sets forth in this paragraph 8 shall apply if either the Client or FIA is a formal party to any lawsuits, investigations, claims or other proceedings related to the engagement and that such commitments shall extend upon the terms set forth in this section to any FIA Indemnitees. The Client further agrees that, without prior notice to FIA, it will not enter into any settlement of a lawsuit, claim or other proceeding related to FIA and its engagement or the Agreement (whether or not FIA or any other FIA Indemnitee is an actual or potential party to such lawsuit, claim or proceeding) unless the Client uses reasonable best efforts to ensure that such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim or other proceeding of all FIA Indemnitees for any acts or statements related to the engagement or the underlying lawsuit.

If any of the FIA Indemnitees are required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Client shall reimburse FIA for any professional time and expenses (including reasonable legal fees) incurred to respond to the request.



The Client further agrees that the FIA Indemnitees are entitled to retain, at their own cost and expense, separate counsel of their choice in connection with any of the matters in respect of which indemnification, reimbursement or contribution may be sought under this Agreement.  In no event shall FIA be liable for punitive, exemplary, consequential or indirect damage or expenses (including without limitation, loss profits, opportunity costs, etc.), which may be alleged in connection with this Agreement or the services provided hereunder, except for any such loss or damage resulting from FIA's gross negligence or willful misconduct.

The terms of this paragraph (Indemnification; Limitation on Liability) shall survive the expiration or termination of this Agreement.]

### 9.  PUBLICITY

The Client agrees to allow the CRO to arrange for the publication, at the expense of the CRO, of one or more stories about the transactions, subject to prior written approval by the Client.

### 10. AUTHORITY

The person signing this Agreement on behalf of the Client certifies that he or she has the authority as a principal, or as an authorized agent, of the Client, to enter into this Agreement.

### 11. APPLICABLE LAW

This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

### 12. ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement between the parties hereto and supersedes any prior oral or written agreements or understandings. Any modification or amendment to this Agreement must be in writing and signed by both parties.

### 13. SUCCESSORS AND ASSIGNS

This Agreement shall be binding and inure to the benefit of the CRO, FIA, the Client, and their respective officers, directors, members, shareholders, employees, agents, heirs, executors, successors and assigns.

### 14. JAY ALIX & ASSOCIATES PROTOCOL

FIA and the Client acknowledge the Jay Alix & Associates Protocol (the "Protocol") imposed by the United States Trustee and the United States Bankruptcy Court barring a financial advisory firm from serving in multiple roles on behalf of a debtor in possession in a Chapter 11 restructuring.  Based upon the current Bankruptcy Case respecting the Client, the Protocol will apply in connection with the application to retain FIA and David Goldwasser as CRO pursuant to this Agreement.  Thus, the Client engages FIA in a single capacity, solely as CRO, to provide the services set forth herein, so as to comply, among other things, with the Protocol.



**IN WITNESS WHEREOF,** the parties have executed this Agreement the day and year written below.

Agreed and accepted:

**VALDESIA GARDENS HOUSING DEVELOPMENT FUND CORPORATION**

By: _____

Alexis Baez
President

Date: 11/18/24

**FIA CAPITAL PARTNERS, LLC**

By: **box** SIGN        15JJ9VVW-422ZVQ6Y

David S. Goldwasser
President

Date: Nov 19, 2024



## FIA CAPITAL PARTNERS, LLC WIRE INFORMATION:

Account Name: FIA CAPITAL PARTNERS LLC
Account Address:
3284 N 29th Ct
Hollywood, FL 33020

Account # 898155414847
Routing # (electronic (ACH)): 063100277
Routing # (wires): 026009593

Bank Info:
Bank of America, NA
851 S. State Road 7
Hollywood, FL 33023

*Please call Karen Menendez at 917.459.4503 or Yitz Taub at 646.872.2231 to confirm our wire information.*

3284 North 29th Court, Hollywood, FL 33020